IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD JACKSON, Individually and On Behalf of All Others Similarly Situated, | No. 1:16-cv-05093-LTS-RLE |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF HALYARD DEFENDANTS' MOTION TO DISMISS THE CORRECTED AMENDED CLASS ACTION COMPLAINT** |
| HALYARD HEALTH, INC., ROBERT E. ABERNATHY, STEVEN E. VOSKUIL, KIMBERLY-CLARK CORPORATION, THOMAS J. FALK, and MARK A. BUTHMAN, | |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................2

MOTION TO DISMISS STANDARD....................................................................................4

ARGUMENT AND CITATION OF AUTHORITY .................................................................5

I.  THE § 10(b) CLAIM SHOULD BE DISMISSED BECAUSE THE COMPLAINT
    FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION .................5

    A.  The Complaint Fails to Plead Falsity with the Requisite Particularity...................5

    B.  The Complaint Fails to Plead a Duty to Disclose the Alleged Omitted
        Information .................................................................................................8

    C.  The Complaint Fails to Plead Materiality............................................................10

II.  THE § 10(b) CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A
     STRONG INFERENCE OF SCIENTER ........................................................................12

    A.  The Complaint Fails to Allege Motive and Opportunity ......................................13

    B.  The Complaint Fails to Allege Strong Circumstantial Evidence of Conscious
        Misbehavior or Recklessness ................................................................................15

        1.  The 2013 Intertek Report Does Not Give Rise to a Strong Inference of
            Scienter Against the Halyard Defendants .................................................16

        2.  The Confidential Witness Allegations Do Not Give Rise to a Strong
            Inference of Scienter ................................................................................17

III.  THE § 10(b) CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE LOSS
      CAUSATION ADEQUATELY ........................................................................................18

IV.  THE CONTROL PERSON CLAIM SHOULD BE DISMISSED ...................................21

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Am. High-Income Tr. v. Alliedsignal,*
    329 F. Supp. 2d 534 (S.D.N.Y. 2004)....................................................................14

*Bd. of Tr. of City of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO,*
    811 F. Supp. 2d 853 (S.D.N.Y. 2011)...................................................................14

*Cent. States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.,*
    543 F. App'x 72 (2d Cir. 2013) .......................................................................20, 21

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.,*
    967 F. Supp. 2d 771 (S.D.N.Y. 2013)....................................................................4

*Dempsey v. Vieau,*
    130 F. Supp. 3d 809 (S.D.N.Y. 2015).........................................................2, 4, 6, 8

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009)......................................................2, 12, 13, 14, 15

*Garber v. Legg Mason, Inc.,*
    347 F. App'x 665 (2d Cir. 2009) .......................................................................19

*GE Inv'rs v. Gen. Elec. Co.,*
    447 F. App'x 229 (2d Cir. 2011) .......................................................................5

*Glaser v. The9, Ltd.,*
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................17

*In re AOL Time Warner, Inc. Sec. Litig.,*
    503 F. Supp. 2d 666 (S.D.N.Y. 2007)..................................................................18

*In re Bank of Am. AIG Disclosure Sec. Litig.,*
    980 F. Supp. 2d 564 (S.D.N.Y. 2013)...........................................................2, 9, 10

*In re Bristol-Myers Squibb Sec. Litig.,*
    312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................................13

*In re Coty Inc. Sec. Litig.,*
    14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)................................9

*In re Doral Fin. Corp. Sec. Litig.,*
    563 F. Supp. 2d 461 (S.D.N.Y. 2008)..................................................................17

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006) ..............................................................14

*In re Lion's Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ...................................................................9

*In re Lone Pine Res., Inc.*,
    No. 12-civ-4839, 2014 WL 1259653 (S.D.N.Y. Mar. 27, 2014) ...........2, 10, 12

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) .......................................................5, 8, 10

*In re Manulife Fin. Corp. Sec. Litig.*,
    276 F.R.D. 87 (S.D.N.Y. 2011) ..................................................................20, 21

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ...........................................................................2, 19

*Janbay v. Canadian Solar, Inc.*,
    No. 10-civ-4430, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...............11, 17

*Jones v. Perez,*
    550 F. App'x 24 (2d Cir. 2013) .......................................................................17

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) .............................................................................18

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010) .......................................................17, 18

*Masters v. GlaxoSmithKline*,
    271 F. App'x 46 (2d Cir. 2008) ........................................................................12

*Pa. Pub. Sch. Emps. Ret. Sys. v. Bank of Am. Corp.*,
    874 F. Supp. 2d 341 (S.D.N.Y. 2012) .......................................................15, 16

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) .......................................................13, 18

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ...............................................................................6

*Shemian v. Research In Motion Ltd.*,
    570 F. App'x 32 (2d Cir. 2014) .......................................................................12

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
    573 F.3d 98 (2d Cir. 2009) ..........................................................................................4, 15

*Waterford Twp. v. Reg'l Mgmt. Corp.,*
    No. 14-cv-3876-LTS, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ..............................21

## <u>Statutes & Rules</u>

15 U.S.C. § 78a, *et seq.* ........................................................................................ *passim*

15 U.S.C. § 78u-4, *et seq.* ..................................................................................... *passim*

17 C.F.R. § 229.303 ............................................................................................8, 9, 10

Fed. R. Civ. P. 9(b) ............................................................................................4, 6, 11

## INTRODUCTION

This case should be dismissed with prejudice because it is nothing more than an attempt to turn a temporary stock price decline following a 2016 *60 Minutes* television episode about a consumer lawsuit filed almost two years earlier into a securities claim. Negative allegations in litigation filed in 2014 that *60 Minutes* subsequently re-characterized in 2016 simply cannot be the basis for a shareholder securities class action, particularly where that consumer lawsuit relates to a single product[1] that accounts for a mere 3% of Halyard Health, Inc.'s[2] global sales.

Completely lacking any particularized allegations that Halyard or its executives made any misleading statements or acted with an intent to defraud, this action is a classic example of the type of abusive strike suit the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.* was designed to curb. There are at least three reasons why the Complaint[3] should be dismissed with prejudice.[4]

***First***, the claim alleged under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.* is subject to dismissal because there is no actionable misstatement or omission alleged. The Complaint fails to plead the falsity of any alleged misstatements, fails to plead a duty to disclose any alleged omissions, and does not (and cannot) plead that information relating to the MicroCool surgical gown is material to Halyard. *See*

---

[1] The product is the MicroCool surgical gown.

[2] Halyard Health, Inc. is referred to herein as "Halyard" or the "Company." Defendants Robert E. Abernathy and Steven E. Voskuil are Halyard's Chief Executive Officer and Chief Financial Officer, respectively. Messrs. Abernathy and Voskuil are referred to herein as the "Individual Defendants" and, along with Halyard, are collectively referred to herein as the "Halyard Defendants."

[3] Plaintiff's Corrected Amended Class Action Complaint, filed on December 12, 2016 (ECF No. 50) ("Complaint" or "Compl.").

[4] Plaintiff voluntarily dismissed the claims for §§ 11 and 15 of the Securities Act of 1933 with prejudice (Counts III and IV of the Complaint). *See* ECF No. 52.

*Dempsey v. Vieau*, 130 F. Supp. 3d 809 (S.D.N.Y. 2015); *In re Lone Pine Res., Inc.*, No. 12-cv-4839, 2014 WL 1259653 (S.D.N.Y. Mar. 27, 2014); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564 (S.D.N.Y. 2013).

**Second**, the Complaint's conclusory allegations that the Halyard Defendants somehow acted with an intent to defraud wholly fail to give rise to the requisite strong inference of scienter for a § 10(b) claim. *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009). The Halyard Defendants are not alleged to have benefitted in any way from the alleged fraud. Indeed, the Individual Defendants both *purchased* stock during the putative class period[5] alleged against the Halyard Defendants.

**Third**, the Complaint alleges the *60 Minutes* episode was the "corrective disclosure" that satisfies the requirement to plead the mandatory § 10(b) element of loss causation, but negative journalistic characterizations of previously disclosed facts cannot be a corrective disclosure under established and controlling precedent. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010). The Complaint, thus, fails to plead loss causation.

For the reasons summarized above and those developed below, the Complaint should be dismissed with prejudice because it abjectly fails to meet the heightened pleading requirements of the PSLRA.[6]

**BACKGROUND**

Halyard, which was spun off from Kimberly-Clark in October 2014, is organized into two operating segments: Surgical and Infection Prevention (S&IP) and Medical Devices.

---

[5] October 21, 2014 through April 29, 2016 (the "Halyard Class Period"). The Complaint alleges a different class period against the Kimberly-Clark defendants.

[6] Because the Complaint fails to state a claim under § 10(b), the § 20(a) claim fails as well. *See infra* at 21.

Compl. ¶ 22. The S&IP segment sells numerous types of products, including "sterilization wrap, surgical drapes and gowns, facial protection, protective apparel and medical exam gloves." *See* Exhibit A (Form 10-K excerpts).[7]

MicroCool is one type of surgical gown sold by Halyard's S&IP segment and accounts for approximately 3% of Halyard's global sales. *Id.*; Exhibit B (5/2/16 press release). **Since 2011, Halyard has sold more than 58 million MicroCool gowns with not a single incident of any healthcare provider contracting a virus or infection and less than one complaint of "strikethrough"[8] per million gowns sold**. *Id.*

Both the Complaint filed in this case and the underlying consumer complaint are primarily based on a test of the MicroCool gown that was performed by Intertek and commissioned by Cardinal Health, Inc. ("Cardinal"), a competitor of Kimberly-Clark, at a time when Kimberly-Clark and Cardinal were in litigation against each other. Compl. ¶¶ 37, 80. The test ordered by Cardinal was not conducted by or at the request of Halyard, and the test results (the "2013 Intertek Report") were an extreme outlier. *See* Exhibit C (5/1/16 press release). Numerous other tests conducted before and afterward do not match the results in the 2013 Intertek Report, and there has never been any indication whatsoever that the 2013 Intertek Report's results are indicative of the performance of the MicroCool gowns in the field. *Id.*

Nonetheless, the 2013 Intertek Report served as a basis for the consumer class action filed in the United States District Court for the Central District of California on October 29, 2014, captioned *Shahinian, et al. v. Kimberly-Clark Corporation, et al.,* No. 2:14-cv-08390-

---

[7] The Exhibits referenced throughout are attached to the Declaration of John A. Jordak, Jr. in Support of Halyard Defendants' Motion to Dismiss the Corrected Amended Class Action Complaint, filed contemporaneously herewith.

[8] Strikethrough refers to when fluid passes directly through the gown, compromising the barrier.

DMG-SH (C.D. Cal.) (the "*Shahinian*" lawsuit). Compl. ¶ 36. The *Shahinian* lawsuit was disclosed in both a *Law360* and a *BusinessWire* article released on October 30, 2014, and, thus, it is indisputable that the allegations in the *Shahinian* lawsuit were in the public domain as of October 30, 2014. *See* Exhibits D, E.

The *Shahinian* lawsuit and the 2013 Intertek Report were the subject of a *60 Minutes* episode aired by CBS over a year-and-a-half later on May 1, 2016. Compl. ¶¶ 79-81. Capitalizing on the media-hype surrounding the Ebola crisis, the *60 Minutes* episode simply regurgitated the allegations made in the *Shahinian* lawsuit and related press, including an interview with the plaintiff's lawyer, and loosely tried to link the allegations to the Ebola crisis in an attempt to make headlines.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Dempsey*, 130 F. Supp. 3d at 814. "A complaint alleging securities fraud [under § 10(b) of the Exchange Act] is subject to two heightened pleading standards." *Id.* First, the complaint must satisfy Federal Rule of Civil Procedure 9(b) by stating with particularity the circumstances constituting fraud. *Id.* Second, the complaint must satisfy the heightened pleading requirements of the PSLRA, which were enacted "as a check against abusive litigation by private parties." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009). "The PSLRA expanded on the Rule 9(b) standard, requiring that securities fraud complaints specify each misleading statement; that they set forth the facts on which a belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 777–78 (S.D.N.Y. 2013).

To sustain a private cause of action under § 10(b), the complaint must adequately plead (a) a material misrepresentation or omission by the defendants, (b) scienter, (c) a connection between the misrepresentation or omission and the purchase or sale of a security, (d) reliance upon the misrepresentation or omission, (e) economic loss, and (f) loss causation. *GE Inv'rs v. Gen. Elec. Co.*, 447 F. App'x 229, 231 (2d Cir. 2011). Complaints should be dismissed where even one element is not pled adequately. As explained below, the § 10(b) claim fails because the Complaint fails to allege an actionable misstatement or omission; fails to allege facts giving rise to a strong inference of scienter; and, fails to allege loss causation.

## ARGUMENT AND CITATION OF AUTHORITY

I.      **THE § 10(b) CLAIM SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION.**

To survive a motion to dismiss, the PSLRA requires that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). As explained below, the Complaint fails to allege an actionable misstatement or omission because it fails to plead (a) the falsity of any alleged misstatement; (b) that any duty to disclose the alleged omitted information was violated; and (c) the materiality of any alleged misstatement.

### A.      **The Complaint Fails to Plead Falsity with the Requisite Particularity.**

The Complaint alleges that the Halyard Defendants made four alleged misstatements. Compl. ¶¶ 61, 63, 64, 66. "A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false at the time it was made." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014). As the Second

Circuit has explained, "[t]o succeed on this claim, plaintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Where the complaint "contains no factual allegations demonstrating the falsity of the statements[, it] is insufficient to meet the stringent pleading requirements of Rule 9(b) and the PSLRA." *Dempsey*, 130 F. Supp. 3d at 815.

The Complaint here fails to plead any specific facts demonstrating the falsity of any of the four alleged misstatements.

> *Statement No. 1*: The Complaint alleges that Halyard's Form 8-K stated the "MicroCool gowns are 'innovative, cost-effective and high quality products.'" Compl. ¶ 61.

The Form 8-K actually provides that "[o]ur S&IP products are marketed under well-known brands such as KIMGUARD ONE-STEP sterilization wrap, MICROCOOL surgical gowns, and FLUIDSHIELD face masks and ***are recognized by our customers*** as innovative, cost-effective and high quality products.'" *See* Exhibit F (emphasis added).

The only allegations remotely directed to this statement about Halyard's customers are alleged statements by a confidential witness and Bernard Vezeau about an ***unspecified number*** of ***unidentified customers*** filing complaints about the MicroCool gown at ***unspecified times***. Compl. ¶¶ 40, 79. These vague allegations do not demonstrate that Halyard's October 21, 2014 statement about its ***customers' views*** was false at the time it was made, particularly in light of Halyard's disclosure on May 2, 2016 that "[t]he feedback the company has received from doctors and nurses has been overwhelmingly favorable. The documented complaint rate concerning alleged incidents of strikethrough with the gowns is fewer than one in 1 million gowns sold." *See* Exhibit B.

*Statement No. 2*:  The Personal Protective Guide on Halyard's website provides that the MicroCool gown is "AAMI Level 4/Liquid Barrier Protection."  Compl. ¶ 63; Exhibit G.

As the Complaint recognizes, the MicroCool gown received a 510(k) clearance from the U.S. Food and Drug Administration ("FDA").  Compl. ¶ 27.  The 510(k) clearance from the FDA authorized Halyard to market the MicroCool surgical gown as "meet[ing] the Level 4 requirements of the AAMI Liquid Barrier classifications."  *See* Exhibit H at p. 5.  The Complaint does not plead the FDA has stripped away this 510(k) clearance, and, thus, Halyard is permitted to market the MicroCool gown as "AAMI Level 4."

Moreover, the alleged test failures cited in the Complaint do not render this statement false because there are no allegations in the Complaint of any failed tests during the Halyard Class Period itself.  Even if the failed tests had occurred during that time, the Complaint would still fail to allege falsity adequately because nowhere does it allege that a negative test conducted by a competitor and intermittent internal tests somehow render the MicroCool gown no longer AAMI Level 4 as cleared by the FDA.

*Statement No. 3*:  "Our products and solutions are designed to address some of today's most important healthcare needs, namely preventing infections and reducing the use of narcotics while helping patients move from surgery to recovery.  We market and support the efficacy, safety, and economic benefit of our products with a significant body of clinical evidence."  Compl. ¶ 64.

This statement comes from the Form 10-Q filed on November 20, 2014 (not November 11, 2014, as alleged in the Complaint).  The word "MicroCool" does not even appear in this Form 10-Q. Instead, the statement is about Halyard as a whole and there are no allegations that the statement is not true.  Even if the statement were specific to MicroCool, which it is not, it still would not be false because the Complaint actually alleges the excerpt from the 510(k) that supports the truth of the statement – that there is clinical evidence supporting the MicroCool gown.  Compl. ¶ 27.

*Statement No. 4*: "In our S&IP business, we are focused on maintaining our market position by providing innovative customer-preferred product enhancements, with a particular focus on the operating room. Leveraging customer insights and our vertically integrated manufacturing capabilities, we seek to continuously improve our product designs, specifications and features to deliver cost efficiencies while improving healthcare worker and patient protection." Compl. ¶¶ 66, 74.

This statement is about the S&IP (Surgical and Infection Prevention) segment as a whole. As explained in Halyard's Form 10-K, the S&IP segment has a broad portfolio of product offerings, including "sterilization wrap, surgical drapes and gowns, facial protection, protective apparel and medical exam gloves." *See* Exhibit A. Simply put, there are no allegations as to the falsity of this statement. Moreover, the unspecified number of purportedly failed tests alleged in the Complaint are about only one product and do not render false this statement about the S&IP segment as a whole. This is particularly true in light of the MicroCool gown's safety record – with over 58 million gowns sold, there has not been a single incident of any healthcare provider contracting a virus or infection. *See* Exhibit B (5/2/16 press release).

Because the Complaint fails to allege that any of the four statements attributed to the Halyard Defendants is false, the Complaint should be dismissed with prejudice. *See, e.g., Dempsey*, 130 F. Supp. 3d at 815.

## B. The Complaint Fails to Plead a Duty to Disclose the Alleged Omitted Information.

The Complaint also attempts to state a claim by alleging a failure to disclose. Compl. ¶ 78. "Similar to the falsity of statements, omissions are only actionable if a defendant is under a duty to disclose information and fails to do so." *Lululemon*, 14 F. Supp. 3d at 571. In other words, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." *Id.*

Here, the purported source of the duty to disclose is Item 303 of Regulation S-K, 17 C.F.R. § 229.303. Compl. ¶ 98. Item 303 "'imposes a disclosure duty where a trend, demand,

commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operations.'" *Bank of Am.*, 980 F. Supp. 2d at 584. The Complaint fails to allege either prong.

As to the first prong of Item 303, "[k]nowledge of a trend is an essential element triggering disclosure under Item 303." *In re Coty Inc. Sec. Litig.*, 14-cv-919, 2016 WL 1271065, *5 (S.D.N.Y. Mar. 29, 2016). "To demonstrate knowledge, a plaintiff must allege facts that raise a 'plausible inference' that the company's management was aware of a trend that would 'materially impact' the company's financial condition." *Id.* No such trend is alleged in the Complaint. The isolated tests to which the Complaint refers do not create a trend. Nor is it alleged that management knew of any trend. The Complaint "merely allege[s] that there were meetings and describe only in broad, conclusory terms what was discussed at those meetings. As a result, Plaintiff's allegations are 'sketchy at best' and 'do not provide enough detail to nudge plaintiff's claims across the line from conceivable to plausible.'" *Id.* at *7 (dismissing omission claim based on Item 303).

As to the second prong of Item 303, the Complaint does not and cannot allege that any "trend" with the MicroCool gowns was "***reasonably likely to have material effects*** on [Halyard]'s financial condition or results of operations." *Bank of Am.*, 980 F. Supp. 2d at 584 (emphasis added). Indeed, the Complaint has not sufficiently alleged that the MicroCool issues were "'reasonably likely' to generate any loss, let alone a material loss." *Id.* Where, as here, the complaint fails to allege the likelihood of a material loss, a claim for a failure to disclose under Item 303 should be dismissed. *In re Lion's Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 20 (S.D.N.Y. 2016) (dismissing claim premised on duty to disclose under Item 303 where materiality of potential loss was not alleged).

Even if the Complaint could allege that Item 303 was somehow triggered, which it cannot, the Complaint would still fail because the information that the Halyard Defendants allegedly failed to disclose was publicly available. "Although the underlying philosophy of federal securities regulation is that of full disclosure, there is no duty to disclose information to one who reasonably should be aware of it." *Bank of Am.*, 980 F. Supp. 2d at 576. "Where allegedly undisclosed material information is in fact readily accessible in the public domain, a defendant may not be held liable for failing to disclose this information." *Id.* Here, as explained in detail below in Section III, the very information the Complaint alleges the Halyard Defendants purportedly failed to disclose was in the public domain on October 30, 2014, when press releases about the *Shahinian* lawsuit were issued. *See* Exhibits D, E. "Because the substance of the alleged omissions was already in the public domain, the alleged omissions could not have altered 'the total mix of information available' to the public and were also immaterial as a matter of law." *Bank of Am.*, 980 F. Supp. 2d at 576. The Complaint should, therefore, be dismissed with prejudice.

### C. The Complaint Fails to Plead Materiality.

The Complaint should be dismissed for the additional reason that it fails to allege that any misstatement or omission about the MicroCool gowns was material. "[T]o be actionable under Section 10(b) and Rule 10b-5, the alleged misstatement or omission must be material." *Lululemon*, 14 F. Supp. 3d at 572. "Dismissal is appropriate where Plaintiff fails to allege materiality." *Lone Pine Res.*, 2014 WL 1259653 at *4.

The Complaint attempts to meet the requirement to plead materiality with the bald conclusory allegation that MicroCool gowns are a "principal source of revenue" for the Company. Compl. ¶¶ 24, 67, 75, 86. The SEC filings from which the Complaint quotes,

however, nowhere state that the MicroCool gowns, by themselves, are *a* principal source of revenue. To the contrary, the full statement reads,

> [t]he principal sources of revenue in each global business segment are described below: S&IP provides healthcare supplies and solutions that target the prevention of healthcare-associated infections. This segment has recognized brands across its portfolio of product offerings, including sterilization wrap, surgical drapes and gowns, facial protection, protective apparel and medical exam gloves. This business is also a global leader in education to prevent healthcare-associated infections. Products in this segment are sold under the HALYARD or KIMGUARD ONE-STEP, QUICK CHECK, SMART-FOLD, POWERGUARD, MICROCOOL, FLUIDSHIELD, PURPLE NITRILE, LAVENDER, STERLING, and other brand names.

*See* Exhibit A.

The Company's SEC filings simply do not identify the MicroCool gowns as the principal source of revenue or otherwise identify the amount of Halyard's total revenues associated with MicroCool. Thus, to plead materiality, the Complaint must allege facts to "place the purported value of [the alleged MicroCool issues] within the context of [Halyard]'s total financial picture." *Janbay v. Canadian Solar, Inc.*, No. 10-civ-4430, 2012 WL 1080306, *6 (S.D.N.Y. Mar. 30, 2012). The Complaint, however, does not contain a single allegation to identify how MicroCool – one of numerous products in only one of two Company segments – was material to the Company. There are no allegations as to the amount of revenues attributable to the MicroCool gown, the amount of profit attributable to the MicroCool gown, or the financial impact that the alleged issues with the MicroCool gown may have had on Halyard. The failure to plead materiality "with the specificity required by Rule 9(b) and the PSLRA" subjects the Complaint to dismissal with prejudice. *Id.*

Not only does the Complaint fail to plead materiality, but it cannot plead materiality given that sales of MicroCool gowns are immaterial to Halyard as a whole. In a press release

issued in response to the *60 Minutes* episode, the Company disclosed that the MicroCool gowns represent only ***approximately 3%*** of Halyard's global sales. *See* Exhibit B. In the Second Circuit, "an omission or misstatement that has an impact of less than 5% on a company's reported financial metrics is *presumptively immaterial*." *Lone Pine Res.*, 2014 WL 1259653, at *4 (emphasis added). Indeed, the Second Circuit has affirmed dismissal of a complaint on materiality grounds where the product at issue constituted less than 3% of the company's revenues. *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 50 (2d Cir. 2008). The Complaint should be dismissed with prejudice because statements related to the MicroCool gowns are not material given that their sales constitute approximately 3% of Halyard's global sales. *Id.*

## II. THE § 10(b) CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A STRONG INFERENCE OF SCIENTER.

The § 10(b) claim should be dismissed for the additional and independent reason that the Complaint fails to allege the requisite strong inference of scienter. 15 U.S.C. § 78u-4(b)(2). "[T]o qualify as 'strong' within the intendment of the PSLRA, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Shemian v. Research In Motion Ltd.*, 570 F. App'x 32, 35 (2d Cir. 2014) (affirming dismissal where scienter was not sufficiently alleged).

The scienter pleading standard may be met by alleging either (a) that defendants had the motive and opportunity to commit fraud or (b) strong circumstantial evidence of conscious misbehavior or recklessness. *ECA*, 553 F.3d at 198–99 (affirming dismissal of complaint for failure to establish a motive to defraud). As explained below, the Complaint fails to allege facts to meet either standard and should, therefore, be dismissed with prejudice.

**A.      The Complaint Fails to Allege Motive and Opportunity.**

To plead scienter under the motive and opportunity prong, the Complaint must allege that the Halyard Defendants "benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198. The Complaint is entirely lacking any allegation that the Halyard Defendants benefitted in some concrete and personal way, and thus fails to allege scienter under the motive and opportunity prong.

Noticeably absent from the Complaint are any allegations that the Halyard Defendants had any insider sales during the Halyard Class Period. Indeed, both Messrs. Abernathy and Voskuil ***purchased*** stock during the Halyard Class Period. Mr. Abernathy purchased 10,000 shares on September 4, 2015, and Mr. Voskuil purchased 1,000 shares on September 1, 2015. *See* Exhibit I (Abernathy Form-4); Exhibit J (Voskuil Form-4).

The Individual Defendants' ***increase*** in Halyard holdings during the Halyard Class Period is "wholly inconsistent with fraudulent intent" and supports dismissal of the Complaint. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (dismissing complaint where individual defendants increased holdings). As one court explained, the motive and opportunity prong cannot be met when the Individual Defendants increase their holdings because "[i]t is nonsensical to impute dishonest motives to the Individual Defendants when each of them suffered . . . losses in their stock holdings." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) (holding motive and opportunity prong not met when individual defendants increased stock holdings).

As numerous courts have held, the lack of insider sales by the Halyard Defendants supports dismissal of the § 10(b) claim for failure to allege scienter under the "motive" prong.

*See Am. High-Income Tr. v. Alliedsignal,* 329 F. Supp. 2d 534, 548-49 (S.D.N.Y. 2004) (dismissing complaint for failure to allege any concrete and personal benefit to the individual defendants resulting from the alleged fraud); *Bd. of Tr. of City of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 868 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) (holding that "[a]bsent some allegation comparable to insider trading to explain how a defendant benefits from an inflated stock price, [the individual defendants'] stock ownership does not provide sufficient motive to sustain the pleading burden."); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) (dismissing complaint for failure to allege any stock sales).

The only hint of "motive" alleged in the Complaint is that the Halyard Defendants sought to make a profit during the Ebola scare. Compl. ¶ 86. The motive to make a profit, however, is not sufficient to allege a strong inference of scienter. As the Second Circuit has explained, "the desire to maximize the corporation's profits does not strengthen the inference of an intent to defraud because earning 'excessive' fees in a competitive marketplace (for as long as it lasts) – far from defrauding the shareholders – actually benefits the shareholders." *ECA*, 553 F.3d at 201. "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of the inquiry." *Id.* at 198.

Moreover, even if Halyard's continued sales of the MicroCool gown could somehow constitute motive, the Complaint wholly fails to allege the amount of profit received and, thus, fails to allege the required "concrete" benefit. *ECA*, 553 F.3d at 198. Indeed, the Complaint could never allege a "concrete" benefit from sales of MicroCool given that the product constituted a mere 3% of Halyard's overall sales.

- 14 -

**B.** **The Complaint Fails to Allege Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness.**

Because the Complaint fails to plead scienter under the "motive and opportunity" prong, it must plead scienter under the "strong circumstantial evidence" prong to stave off dismissal. *ECA*, 553 F.3d at 198. And, where, as here, there is no motive, "the strength of the circumstantial allegations must be correspondingly greater." *Id.* To allege strong circumstantial evidence, the Complaint must allege that the Halyard Defendants (a) "engaged in deliberately illegal behavior"; (b) "knew facts or had access to information suggesting that their public statements were not accurate"; or (c) "failed to check information they had a duty to monitor." *S. Cherry St.*, 573 F.3d at 110.

The Complaint does not allege deliberately illegal behavior or a failure to monitor and, instead, attempts to plead scienter with knowledge of facts or access to information. Compl. ¶ 86 (scienter allegation paragraph). To demonstrate that the Halyard Defendants knew facts or had access to information contradicting their public statements, the Complaint "must identify ***specific contradictory information*** that was available to the [Halyard] Defendants ***at the time*** they made their misleading statements." *Pa. Pub. Sch. Emps. Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 358 (S.D.N.Y. 2012) (emphasis added). "Additionally, a plaintiff 'must specifically identify the reports or statements containing this information.'" *Id.* at 359. The Complaint attempts to meet this standard with reference to the 2013 Intertek Report and allegations from two confidential witnesses about other testing. As explained below, neither is sufficient to allege scienter.

### 1. The 2013 Intertek Report Does Not Give Rise to a Strong Inference of Scienter Against the Halyard Defendants.

The Halyard Defendants' statements at issue in the Complaint were made between October 21, 2014 and April 29, 2016. Compl. ¶ 1. The Complaint alleges that the Halyard Defendants received the 2013 Intertek Report in January 2013. *Id.* ¶ 86. Thus, the 2013 Intertek Report is not contradictory information provided "at the time" the Halyard Defendants made the alleged statements and cannot constitute strong circumstantial evidence of scienter. *Pa. Pub. Sch.*, 874 F. Supp. 2d at 358.

Even if the 2013 Intertek Report were provided to the Halyard Defendants at the time of the alleged misstatements, it still would not give rise to a strong inference of fraud. One test does not mean the MicroCool gowns were no longer AAMI Level 4 gowns or that there was an issue with the safety of the gowns. This is true particularly given the circumstances of the 2013 Intertek Report – it was commissioned by a competitor in conjunction with then-pending litigation between the competitor and Kimberly-Clark. Compl. ¶ 37. The competitor provided Intertek the samples for testing and one box out of three was opened prematurely, which could have impacted the test results. *Id.* As Halyard publicly explained, the 2013 Intertek Report was "an extreme outlier; Halyard's own testing results both before and after that test were completely different." *See* Exhibit C (5/1/16 press release). Further, "[s]ince 2011, Halyard Health has sold more than 58 million MicroCool gowns without a single complaint of personal injury due to a failure in barrier protection." *See* Exhibit B (5/2/16 press release). The results of one test conducted by a competitor during litigation would not give the Halyard Defendants any reason to doubt the safety and performance of the 58 million MicroCool gowns sold in the field. The 2013 Intertek Report simply does not give rise to a strong inference that the Halyard Defendants made any statements with an intent to defraud.

## 2. The Confidential Witness Allegations Do Not Give Rise to a Strong Inference of Scienter.

The Complaint's final attempt to allege strong circumstantial evidence of scienter is with allegations from two purported confidential witnesses. Compl. ¶¶ 39-48. But those allegations fail to give rise to a strong inference of scienter because "the Complaint ties none of the scienter allegations to any Individual Defendant." *Janbay*, 2012 WL 1080306, at *11.

To survive dismissal, confidential witness allegations must "establish what specific contradictory information the Individual Defendants received" and "when they received it." *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010). The Complaint here contains neither. The confidential witness allegations vaguely allege that (a) confidential witness 1 attended unspecified meetings on unspecified dates with unidentified "senior leadership" where issues with MicroCool were discussed (Compl. ¶ 40); and (b) confidential witness 2 reported MicroCool issues to unidentified "senior management" on unspecified dates. *Id.* ¶ 43.

These allegations are "so vague as to be meaningless because [they] contain[] no time frame within which the meetings occurred, no indication of where within the [Halyard] hierarchy the [senior leadership/management] fell, and no information regarding how extensively or in what manner the reports were discussed." *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (dismissing complaint for failure to allege a strong inference of scienter). Moreover, the confidential witnesses' alleged statements that issues with the MicroCool gowns were "well known" at the Company "do not support a cogent and compelling inference of fraud because none of the confidential witnesses assert direct knowledge that this view was held by defendants." *Jones v. Perez,* 550 F. App'x 24, 28 (2d Cir. 2013); *see also Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594 (S.D.N.Y. 2011) (finding that "the law is

abundantly clear that [a confidential witness's allegation that the defendants 'would have known,'] are insufficient to support scienter because the confidential source did not allege whether any individual defendant actually accessed or reviewed the information.").

As one court explained, if the issues with the MicroCool gowns were so well known, the confidential witnesses should have been able to "recount specific meetings at which the Individual Defendants actually received contradictory information." *Local No. 38*, 724 F. Supp. 2d at 462. But the Complaint does not identify any specific information that was provided to any Halyard Defendant at any specific point in time. Because "Plaintiff has not 'specifically identified any reports or statements' or any dates or time frame in which Defendants were put on notice of contradictory information," the confidential witness allegations fail to give rise to a strong inference of scienter. *Canadian Imperial*, 694 F. Supp. 2d at 300. The Complaint should, accordingly, be dismissed with prejudice. *Id.* at 304.

## III.    THE § 10(b) CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE LOSS CAUSATION ADEQUATELY.

To meet the requisite § 10(b) element of loss causation, "a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172–73 (2d Cir. 2005) (internal citations omitted). "In its simplest form, this may be achieved by alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007).

The Complaint attempts to plead loss causation with the allegation that the truth was purportedly revealed by the *60 Minutes* episode in 2016. Compl. ¶ 79. But as the Second Circuit

has held, "[a] negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions." *In re Omnicom*, 597 F.3d at 512. In *Omnicom*, two articles (one in *Advertising Age* and one in *New Media Agencies*) reported facts questioning Omnicom's accounting practices. *Id.* at 511. Plaintiff alleged that a later article was the corrective disclosure, but as the Second Circuit held, the later article was simply a "negative characterization of already-public information" in the two previously released articles. *Id.* at 512.

Similarly, the *60 Minutes* episode was a "negative journalistic characterization" of alleged facts disclosed in the October 30, 2014, press releases about the *Shahinian* lawsuit. Indeed, the *Shahinian* lawsuit press releases disclosed the very information the Complaint alleges was not disclosed. The Complaint alleges a failure to disclose that (a) the MicroCool gowns had failed effectiveness tests and failed to meet industry standards and (b) that defective MicroCool gowns were provided to healthcare providers. Compl. ¶ 78. The October 30, 2014 press release put out on *BusinessWire* about the *Shahinian* lawsuit, however, disclosed the following:

> [T]he suit states that the company has falsely represented to the FDA, health care workers and the general public that the Company's 'MICROCOOL Breathable High Performance Surgical Gowns' are impermeable and provide protection against Ebola despite the fact that the company has known since 2013 that these gowns failed industry tests and do not meet relevant standards, thus placing healthcare professionals and patients at considerable risk for infection and serious bodily harm.

*See* Exhibit E; *see also* Exhibit D hereto (*Law360* article).[9]

---

[9] The Court may consider this press release on a motion to dismiss because it is being submitted for the "fact that press coverage … contained certain information, without regard to the truth of their contents." *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009).

Thus, the very information the Complaint alleges was revealed by the *60 Minutes* episode had already been disclosed in the media over a year-and-a-half earlier. Where, as here, the alleged corrective disclosure consists of previously revealed information, the Complaint must "identify how the alleged corrective disclosure 'even purported to reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint'" to allege loss causation. *Cent. States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (affirming dismissal of the complaint with prejudice). The *60 Minutes* episode simply "expressed negative opinions . . . based on information that was already publicly available. Such disclosures are not 'corrective' for the purpose of pleading loss causation." *Id.* The Complaint should, accordingly, be dismissed with prejudice for failure to allege loss causation. *Id.*

Even if the Court finds that some "truth" was revealed in the *60 Minutes* episode, the Complaint should still be dismissed for failure to allege loss causation adequately. According to the Complaint, on May 2, 2016, the day after the episode aired, the stock price declined to $26.95. Compl. ¶ 83. On April 29, 2016, the trading day before the episode aired, the stock closed at $28.16. *See* Exhibit K (stock price chart of relevant days). But by May 4, 2016, three days after the episode aired, the stock had already rebounded to $28.49, above the price at which it was trading before the episode aired. "While such a 'rebound' in a stock price after an alleged corrective disclosure does not make the allegation implausible per se, the Lead Plaintiffs' failure to address or explain this rebound renders their loss causation allegation implausible in this case." *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011) (dismissing complaint for failure to allege loss causation).

Plaintiff tries to mitigate this positive movement in the stock price with the allegation that

promotions for the episode began to air on April 29, 2016, and that the promotion caused the stock to drop.  But the Complaint does not allege anywhere what corrective information was in the promotion, and, thus, this allegation fails to allege loss causation.  *Fed. Home Loan*, 543 F. App'x at 75 (complaint must allege the information that the corrective disclosure revealed).  Moreover, Halyard's stock price was trading at $32.34 by June 2, 2016, above the $31.50 trading price before the episode promotion allegedly began to run on April 29, 2016.  *See* Exhibit K.  The Complaint fails to address this stock price rebound, and, thus, fails to allege loss causation.  *Manulife*, 276 F.R.D. at 104 (complaint must address reason for stock price rebound to allege loss causation).

In sum, the Complaint should be dismissed with prejudice because it fails to allege that the *60 Minutes* episode (or the promotion thereof) was a corrective disclosure.  The information allegedly needed to correct the purported misstatements had been disclosed over a year-and-a-half earlier by the October 30, 2014 press releases about the *Shahinian* lawsuit.  The information in the *60 Minutes* episode was nothing more than a negative characterization of previously disclosed information as highlighted by the quick rebound in Halyard's stock price, which the Complaint makes no effort to explain.

## IV.    THE CONTROL PERSON CLAIM SHOULD BE DISMISSED.

As explained above, the Complaint fails to plead an actionable claim under § 10(b) of the Exchange Act.  Because the Complaint fails to state a claim for a primary violation of the securities laws, there can be no control person liability under § 20(a) of the Exchange Act.  *See Waterford Twp. v. Reg'l Mgmt. Corp.*, No. 14-cv-3876-LTS, 2016 WL 1261135, at *11 (S.D.N.Y. Mar. 30, 2016) (dismissing § 20(a) control person liability claim because the complaint failed to allege a primary violation).  Count II of the Complaint, therefore, should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, the Halyard Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated:  February 16, 2017          **ALSTON & BIRD LLP**

/s/ John A. Jordak, Jr.
John L. Latham (*admitted pro hac vice*)
John A. Jordak, Jr.(*admitted pro hac vice*)
Lisa R. Bugni (*admitted pro hac vice*)
Elizabeth Gingold Clark
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone:  (404) 881-7000
Facsimile:   (404) 881-7777
Email: john.latham@alston.com
          john.jordak@alston.com
          lisa.bugni@alston.com
          elizabeth.clark@alston.com

Brett D. Jaffe
90 Park Avenue
New York, New York 10016-1387
Telephone: (212) 210-9547
Facsimile:  (212) 210-9444
Email: brett.jaffe@alston.com

*Counsel for Defendants Halyard Health, Inc., Robert E. Abernathy, and Steven E. Voskuil*