UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RONALD JACKSON, individually and on
behalf of all others similarly situated,

       Plaintiff,

  -v-                                                    No. 16-CV-05093-LTS

AVANOS MEDICAL, INC., ROBERT E.
ABERNATHY, STEVEN E. VOSKUIL,
KIMBERLY-CLARK CORPORATION,
THOMAS J. FALK, and MARK A.
BUTHMAN,

       Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

On December 12, 2016, Lead Plaintiff Ronald Jackson ("Plaintiff") filed a Corrected Amended Complaint in this putative securities fraud class action against Avanos Medical, Inc. ("Avanos"), formerly known as Halyard Health, Inc.[1], Kimberly-Clark Corporation ("Kimberly-Clark"), Avanos Chief Executive Officer ("CEO") Robert E. Abernathy ("Abernathy"), Avanos Chief Financial Officer ("CFO") Steven E. Voskuil ("Voskuil"), Kimberly-Clark Executive Chairman and CEO Thomas J. Falk ("Falk"), and former Kimberly-Clark CFO Mark A. Buthman ("Buthman," together with Abernathy, Voskuil, and Falk, the "Individual Defendants") seeking to recover damages allegedly caused by Defendants' violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated under Section 10(b). (Corrected Amended Class Action Complaint

---

[1] On June 30, 2018, Defendant Halyard Health, Inc. changed its name to Avanos Medical, Inc. (<u>See</u> Docket Entry Nos. 90 and 92.)

("CACAC"), Docket Entry No. 50.) On March 30, 2018, the Court granted Defendants' motion to dismiss the CACAC in its entirety, with prejudice, and ordered the Clerk of Court to close the case. ("March Order," Docket Entry No. 80.)

On April 27, 2018, Plaintiff moved pursuant to Federal Rules of Civil Procedure 15(a), 59(e), and 60(b) for an order granting relief from the judgment entered upon the Court's March Order to permit Plaintiff to file his Proposed Second Amended Complaint. ("PSAC," Docket Entry No. 85-1, and Docket Entry No. 83.) Defendants jointly opposed Plaintiff's motion (Docket Entry Nos. 88 and 89); no reply papers were filed. The Court has considered carefully the parties' submissions and, for the following reasons, the motion is denied in its entirety.

BACKGROUND

The Court assumes the parties' familiarity with the factual allegations underlying this case, which are set forth in greater detail in the March Order. In brief, Plaintiff alleges that Defendants made materially misleading statements and omissions in connection with their "MicroCool" surgical gown, a product that Defendants allegedly marketed as a "high quality" gown that met the Association for the Advancement of Medical Instrumentation's ("AAMI") criteria for Level 4 liquid barrier protection against communicable diseases like Ebola, HIV, and hepatitis. (See Docket Entry No. 84 at 1-2.) Plaintiff alleges that Defendants should have disclosed that the MicroCool gowns actually "failed to meet industry standards for impermeability," that a large number of gowns "failed independent testing," and that "the manufacturing process for MicroCool could not be validated as required by FDA regulations." (Id. at 2.)

In its March Order, the Court concluded that Plaintiff's securities fraud allegations were pleaded insufficiently, as they failed "to establish a cogent inference of scienter at least as compelling as any opposing inference one could draw from the facts alleged." (March Order at 15) (internal quotations omitted). Specifically, Plaintiff failed to plead sufficiently that Defendants had the "motive and opportunity to commit fraud" because the CACAC demonstrated only a "desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation," which are not actionable under the securities laws. (Id. at 13, 16-17.) Further, the Court concluded that the CACAC did not plead "strong circumstantial evidence of conscious misbehavior or recklessness" because Plaintiff failed to "specifically plead facts demonstrating or supporting plausibly an inference that Abernathy, Voskuil, Falk, or Buthman was personally informed or would reasonably have been informed about any alleged issues with the MicroCool gowns, their failure to meet industry standards, or the ability of the manufacturing process to be validated to ensure it complied with AAMI Level 4 criteria, [or] that the Individual Defendants' behavior was an 'extreme departure from the standards of ordinary care.'" (Id. at 17-18.) Because Plaintiff had failed to adequately plead his Section 10(b) and Rule 10b-5 claims, the Court also dismissed his Section 20(a) claims. (Id. at 22.)

Plaintiff now moves for relief from the Court's judgment and for leave to file a Second Amended Complaint. (Docket Entry No. 83.) The PSAC adds seven new paragraphs, all of which pertain to evidence and court findings in a state-law fraud action litigated in the Central District of California: Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al., 2:14-cv-08390-DMG-PLA (the "Bahamas Action"). (Docket Entry No. 85-1.) Paragraphs 9 to 11 add allegations concerning the jury verdict in the Bahamas Action, and recite portions of

the court's "Findings of Fact and Conclusions of Law." (PSAC ¶¶ 9-11.) Paragraph 38 adds general allegations regarding lab testing of the MicroCool gowns, including testimony from Keith Edgett, Kimberly-Clark's former Global Director of Surgical and Infection Prevention, that "Kimberly-Clark knew about that the [sic] MicroCool gowns were not AAMI Level 4 compliant." (Id. ¶ 38.)

Paragraphs 42 to 44 refer to testimony from the Bahamas Action concerning internal documents and discussions about MicroCool compliance issues. In relevant part, Plaintiff proposes to add allegations that Joanne Bauer, the President of Kimberly-Clark's Healthcare division, "reported directly to Defendant Falk and testified that they spoke on a 'fairly regular basis' and that they had an 'open channel of communication.'" (PSAC ¶ 42.) The PSAC also adds testimony from Bernard Vezeau, who served as Director of Global Strategic Marketing for Surgery and Infection Prevention for both Kimberly-Clark and Avanos, that "Mr. Falk [was] informed of noncompliance issues,"[2] that he and Mr. Edgett had "prepared documents for senior Kimberly-Clark executives that detailed manufacturing problems and resulting product compliance failures" and that "these presentations were presented to 'senior management, including to Mr. Falk.'" (Id. ¶ 43.) Further, the PSAC alleges that Mr. Vezeau knew "'Mr. Falk was well aware of noncompliance issues' . . . because he saw presentations prepared for Mr. Falk that covered the compliance issues." (Id.) In another portion of his Bahamas Action testimony that is not specifically cited in the PSAC, Mr. Vezeau also acknowledged that he "personally never presented to Mr. Falk" about the noncompliance issues and stated that he "ha[d] to assume" that Mr. Falk was aware of them. (Docket Entry No. 89-2 at 10.)

---

[2] The PSAC erroneously attributes this testimony to Mr. Edgett. (See Docket Entry No. 89-2 at 8.)

Lastly, the PSAC alleges that, because "Halyard identified MicroCool in its Class Period SEC filings as one *of its most **important** 'marks' and . . . part of a line of products that constitute a **principal** source of revenue for the Company*, Halyard Defendants Abernathy and Voskuil would have been made aware of the deplorable test results and validation issues that called the efficacy of a key product into troubling question during the spinoff process. . . . particularly . . . because as part of the spinoff [from Kimberly-Clark], Halyard agreed to indemnify Kimberly-Clark for liability relating to its healthcare business." (PSAC ¶ 44) (emphasis in original).

## DISCUSSION

Federal Rule of Civil Procedure 59(e) allows parties to move to "alter or amend a judgment" no later than "28 days after the entry of the judgment." Rule 59(e) motions are granted to "correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). Similarly, Rules 60(b)(1), (2), and (6) allow a court to relieve a party "from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," and "any other reason that justifies relief," respectively. Fed. R. Civ. P. 60(b)(1), (2), (6); see Kotlicky v. U.S. Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987).

The decision as to whether to grant a party's Rule 60(b) motion for reconsideration sits "within the court's broad discretion." Badian v. Brandaid Comm. Corp., 2005 WL 1083807, at *2 (S.D.N.Y. 2005) (internal citation omitted).

Here Plaintiff, who had not sought leave to amend in connection with the motion practice addressed in the March Order, seeks to file a further amended complaint that purportedly addresses the deficiencies identified in the March Order. "[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Federal Rule of Civil Procedure 59(e) or 60(b)." National Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991) (internal quotations omitted). A post-judgment motion for leave to amend "must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011). The court may "take into account the nature of the proposed amendment [and whether amendment would be warranted under Rule 15] in deciding whether to vacate the previously entered judgment." Id. (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). Amendment is not warranted under Rule 15 in the case of "futility." Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y., 337 F.3d 139, 168 (2d Cir. 2003). A proposed amendment would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6). Id.

Where the proposed amendments would be futile, the court may deny a plaintiff's motion to amend the judgment and dismiss plaintiff's claims entirely. See, e.g., Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (finding that "in the absence of any indication that Gallop could . . . provide additional allegations that might lead to a different result, the District Court did not err in dismissing her claim with prejudice"); see also Janese v. Fay, 692 F.3d 221, 229 (2d Cir. 2012) (finding that the district court properly denied plaintiffs' motion to amend because they failed to make any showing that would justify vacating the judgment to allow the reassertion of untimely claims).

Plaintiff argues that he "should be granted leave to file the PSAC because amendment would not be futile." (Docket Entry No. 84 at 3.) Having considered carefully the PSAC and the parties' arguments, the Court concludes that leave to file the PSAC would indeed be futile because, like the CACAC, the PSAC fails to plead adequately "that each of the Defendants acted with scienter, a necessary element to maintain a private damages action under § 10(b) and Rule 10b-5." (March Order at 12.) As explained in the March Order, Plaintiff may establish scienter "by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." (March Order at 13.) The PSAC does not add allegations concerning Defendants' "motive and opportunity to commit fraud." Instead, Plaintiff asserts that the PSAC cures the CACAC's deficiencies by alleging "circumstantial evidence of . . . recklessness" that establishes that the Individual Defendants had been "personally informed or would reasonably have been informed about any alleged issues with the MicroCool gowns." (Docket Entry No. 84 at 5 (citing March Order at 17-18).) The additional material proffered is insufficient to support the requisite inference of reckless conduct.

<u>Vezeau Testimony</u>

In the Bahamas Action, Mr. Vezeau testified that Defendant Thomas Falk, "was informed" of manufacturing and compliance issues with the MicroCool gowns through unspecified "documents" prepared on a quarterly basis for unspecified "senior Kimberly-Clark executives." (PSAC ¶ 43.) Plaintiff attempts to bolster his scienter allegations by quoting portions of Mr. Vezeau's testimony in the PSAC. However, several layers of speculative inferences are required to construe the new material as support for a finding of recklessness on the part of any Defendant. First, a fact finder would have to assume that the referenced

"documents" contained information that identified an objective "danger," such that Mr. Falk's failure to respond by changing the company's policies was "highly unreasonable" and "represent[ed] an extreme departure from the standards of ordinary care." (See March Order at 18; see also ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 203 (2d Cir. 2009).) Nor does the PSAC proffer any details about the information regarding "[t]he compliance failures" that was allegedly discussed in the documents." (PSAC ¶ 43.) Without further detail concerning the content of the "documents," there is no plausible basis for an inference that the information presented gave rise to "an obligation on the part of any of the Individual Defendants to . . . act on the information in the testing reports" or to "disclose alleged issues with the MicroCool gowns." (March Order at 18-19.)

Second, the PSAC requires the Court to assume that Mr. Falk actually received the documents that Mr. Edgett and Mr. Vezeau prepared. (PSAC ¶ 43.) Mr. Vezeau testified, however, that he did not know "personally" whether Mr. Falk actually received the documents— he simply "assume[d] that [Mr. Falk] attended [the] meetings" for which the documents were prepared.[3] (Docket Entry No. 89-2 at 10.) Mr. Vezeau's speculative testimony is insufficient to support a plausible inference that Mr. Falk actually received information about the MicroCool compliance issues. Moreover, while Mr. Vezeau testified that "presentations [regarding compliance failures] were presented to 'senior management, including Mr. Falk'" (PSAC ¶ 43), Plaintiff fails to specify the time and place of any of the presentations, who was present, or what was actually discussed. Patel v. L-3 Commc'ns Holdings Inc., 2016 WL 1629325, at *9 (S.D.N.Y. Apr. 21, 2016). These allegations are "too vague and conclusory to support a finding

---

[3] The Court may consider the entirety of the transcripts referenced in the PSAC. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); see also Washington v. Gonyea, 538 F. App'x 23, 25-26 (2d Cir. 2013).

that defendants knew they were making false statements or made those statements with reckless disregard for their truth or falsity." In re Citigroup Inc. Sec. Litig., 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010).

Third, even assuming that Mr. Falk did, in fact, receive substantiated information concerning MicroCool compliance problems, the PSAC requires the Court to assume further that Mr. Falk found these problems significant, such that he would have believed subjectively that Defendants' prior statements were false or misleading, thus giving rise to an obligation to disclose additional information "to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. These suggested layers of inferences are insufficient to plead plausibly the scienter element of the securities fraud claim, even when the further proposed additions to the PSAC are considered, as explained below.

Bahamas Action Findings of Fact and Conclusions of Law

In addition to allegations concerning Mr. Vezeau's testimony, the PSAC adds allegations concerning the post-trial Findings of Fact and Conclusions of Law that were entered in the Bahamas Action. (PSAC ¶¶ 10-11.) Plaintiff asserts that the Findings and Conclusions serve as "evidence as to the 'vulnerability of the MicroCool Gowns' sleeve seams to tearing and/or permitting access to fluids.'" (Docket Entry No. 84 at 8.) However, the PSAC still fails to allege that any of the Individual Defendants were "personally informed or would reasonably have been informed about" these alleged "vulnerabilit[ies]," or demonstrate that such knowledge would provide a basis sufficient for a finding of scienter. (See March Order at 17-18.)

The Bahamas Action Findings and Conclusions fail to support a plausible inference of scienter in the instant case for several additional reasons. First, the court did not make any findings as to the Individual Defendants—they were not parties to the Bahamas

Action. Second, the Findings and Conclusions pertain not to a federal securities law claim, but to an equitable claim brought under California's Unfair Competition Law. Therefore, it is unclear what relevant inference, if any, can be drawn from the Bahamas Action court's findings that Kimberly-Clark and Halyard Health "engaged in a fraudulent business practice."[4] (See Bahamas Action, Docket Entry No. 529 at 6.) Third, the court did not directly conclude that Kimberly-Clark and Halyard Health intentionally failed to disclose material facts to Bahamas; instead, it drew inferences based on what it deemed the jury's "implicit determinations." (See PSAC ¶ 10 (stating that "the jury must have implicitly found that . . . Defendants intentionally failed to disclose material facts to Bahamas," and that "[t]he Court adopts . . . the jury's implicit factual determinations . . . .").)

Therefore, the new allegations concerning the Findings of Fact and Conclusions of Law in the Bahamas Action do not establish "circumstantial evidence of . . . recklessness" or otherwise support a "cogent" inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged." See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

Indemnification Agreement

Lastly, the PSAC alleges that Defendants Abernathy and Voskuil "would have been made aware of" test results and "validation issues" concerning the MicroCool gowns because their employer, Avanos, "agreed to indemnify Kimberly-Clark for liability relating to its healthcare business." (PSAC ¶ 44.) These allegations rely upon the same type of assumptions and speculation the Court previously rejected as insufficient to establish a "strong inference" that the Defendants engaged in "conscious misbehavior or recklessness." (March Order at 21.) As

---

[4] Avanos has not been substituted for Halyard Health in the Bahamas Action.

with the CACAC, nowhere in the PSAC has Plaintiff alleged that Abernathy, Voskuil, or any other Individual Defendant had access to specifically identified reports or statements containing facts contrary to the information set forth in the Defendants' public filings. (March Order at 21.) These new allegations merely speculate as to what the Defendants' knowledge "would have been" without offering any particular facts to support a "cogent and compelling" inference that Defendants possessed an actionable state of mind. See Tellabs, Inc., 551 U.S. at 324.

For these reasons, the Court concludes that the PSAC fails to cure the pleading deficiencies previously identified in the Court's March Order. The PSAC, like the CACAC before it, has not presented facts sufficient to support a strong inference that any of the Individual Defendants were "personally informed or would reasonably have been informed about any alleged issues with the MicroCool gowns." (March Order 17-18.) For the reasons set forth in the Court's March Order, the PSAC also fails to plead (i) corporate scienter and (ii) control person liability under Section 20(a). (March Order at 21-22.) Therefore, because Plaintiff's proposed amendments would not survive a Rule 12(b)(6) motion to dismiss, Plaintiff's motion for leave to amend is denied as futile.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for relief from the judgment under Federal Rules of Civil Procedure 59 and 60 and for leave to amend his pleading under Rule 15 is denied in its entirety. The judgment dismissing the CACAC stands.

This Memorandum Order resolves Docket Entry No. 83.

SO ORDERED.

Dated: New York, New York
March 31, 2019

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge